Helen LATIMORE, Plaintiff–Appellant,

v.

CITIBANK FEDERAL SAVINGS BANK, Marcia Lundberg, and Ed Kernbauer, Defendants–Appellees.

No. 97–3724.

United States Court of Appeals, Seventh Circuit.

Argued April 14, 1998.

Decided Aug. 10, 1998.

Michael D. Gerstein, Chicago, IL, Edwin R. McCullough (argued), Chicago, IL, for Plaintiff–Appellant.

Robert J. Kriss (argued), Jeffrey S. Kinsler, Mayer, Brown & Platt, Chicago, IL, for Defendants–Appellees.

Before POSNER, Chief Judge, and CUDAHY and EASTERBROOK, Circuit Judges.

POSNER, Chief Judge.

Helen Latimore, a black woman, brought a suit charging racial discrimination in real estate lending by Citibank and two of its employees, in violation of an assortment of federal civil rights laws including the Equal Credit Opportunity Act, 15 U.S.C. § 1691(a)(1), and the Fair Housing Act, 42 U.S.C. §§ 3605(a), (b). The district court granted summary judgment for the defendants. Latimore's appeal requires us to consider what the prima facie case of credit discrimination is, that is, how much evidence a plaintiff must submit in order to withstand a motion for summary judgment. There is no reason to think that the answer will be different depending on the particular civil rights statute sued under.

Owner of a home in a largely black neighborhood on the south side of Chicago, Latimore applied to Citibank for a $51,000 loan secured by the home. She satisfied Citibank's standards for creditworthiness, but the bank's rules also required that the ratio of the appraised value of the security (Latimore's home) to the amount of the loan not exceed 75 percent. The bank's appraiser, defendant Kernbauer, appraised the property at only $45,000, yielding a loan-to-value ratio of 113 percent. When defendant Lundberg, the account executive handling Latimore's application, informed her that the appraised value of the home was too low to support a loan in the amount sought, Latimore told Lundberg that the house had been appraised less than a year earlier for $82,000. Lundberg asked Latimore for the appraisal report, and when Lundberg received it she sent it together with Kernbauer's report to the bank's appraisal review department. The department declined to overrule Kernbauer's appraisal, on the ground that the comparable sales on which the $82,000 appraisal had been based weren't really comparable, because they involved property more than six blocks from Latimore's home. And so Latimore did not receive the loan. Some months later she applied for a loan from another bank, which appraised her home at $79,000 and made her the loan, though for a smaller amount than she had sought from Citibank ($46,000 instead of $51,000) and at a one percent higher interest rate. The damages sought are the additional interest plus certain consequential damages.

In most discrimination cases, the plaintiff can establish a prima facie case either by presenting evidence of having been actually discriminated against on some forbidden ground such as race or by satisfying the *McDonnell Douglas* standard. See, e.g., *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973); *Furnco Construction Corp. v. Waters*, 438 U.S. 567, 98 S.Ct. 2943, 57 L.Ed.2d 957 (1978). Under that standard, in a typical case of employment discrimination, involving say the denial of a promotion to a black employee, the plaintiff would have to show only that he was qualified for the promotion and that a white got it instead, and the burden would then be on the employer to come forth with a noninvidious reason for why the white rather than the black got the promotion. Although the *McDonnell Douglas* standard originated and evolved in cases involving racial discrimination in employment, it has been extended to all sorts of other discrimination not even limited to the employment setting. See, e.g., *Coco v. Elmwood Care, Inc.*, 128 F.3d 1177 (7th Cir. 1997); *Leffel v. Valley Financial Services*, 113 F.3d 787, 792 (7th Cir.1997); *Hornick v. Noyes*, 708 F.2d 321, 325 n. 8 (7th Cir.1983); *Teahan v. Metro–North Commuter R. Co.*, 951 F.2d 511, 514 (2d Cir.1991); *Lipsett v. University of Puerto Rico*, 864 F.2d 881, 896–97, 899 (1st Cir.1988). So numerous are these extensions that we were not surprised when the bank's counsel invited us to use *McDonnell Douglas* as a template in credit discrimination cases as well.

The propriety of such use was assumed in *Simms v. First Gibraltar Bank,* 83 F.3d 1546, 1558 (5th Cir.1996); *Moore v. U.S. Dept. of Agriculture,* 55 F.3d 991, 995 (5th Cir.1995), and *Ring v. First Interstate Mortgage, Inc.,* 984 F.2d 924, 926 (8th Cir.1993). But it was not discussed and wholesale transposition of the *McDonnell Douglas* standard to the credit discrimination context would display insensitivity to the thinking behind the standard. Normally the burden of producing evidence of each element of the plaintiff's claim is on the plaintiff. There has to be a reason for shifting the burden to the defendant. It is not reason enough that essential evidence is in the defendant's possession and would be difficult for the plaintiff, even with the aid of modern pretrial discovery, to dig out of the defendant. Before the defendant may be put to the burden of producing evidence, the plaintiff has to show that there is some ground for suspecting that the defendant has indeed violated the plaintiff's rights. Otherwise we would have a regime of precomplaint discovery. Anyone could put anyone else to the burden of producing evidence without having anything better than a hope and a prayer that the evidence would establish a violation. Cf. Bruce L. Hay, "Allocating the Burden of Proof," 72 *Ind. L.J.* 651 (1997).

The fact that a qualified black is passed over for promotion in favor of a white has been thought sufficiently suspicious to place on the defendant the minimum burden of presenting a noninvidious reason why the black lost out. But it is the competitive situation—the black facing off as it were against the white—that creates the (minimal) suspicion, and there is no comparable competitive situation in the usual allegation of credit discrimination. Latimore was not competing with a white person for a $51,000 loan. A bank does not announce, "We are making a $51,000 real estate loan today; please submit your applications, and we'll choose the application that we like best and give that applicant the loan." If a bank did that, and a black and a white each submitted an application, and the black's application satisfied the bank's criteria of creditworthiness and value-to-loan ratio yet the white received the loan, we would have a situation roughly parallel to that of a *McDonnell Douglas* case. And when we have an approximation to such a situation, a variant of the *McDonnell Douglas* standard may apply, as we shall see. But such cases are rare, and this is not one of them. The Supreme Court has reminded us that *McDonnell Douglas* was not intended to be a straitjacket into which every discrimination case must be forced kicking and screaming. See, e.g., *McDonnell Douglas Corp. v. Green, supra,* 411 U.S. at 802 n. 13, 93 S.Ct. 1817; *U.S. Postal Service Bd. of Governors v. Aikens,* 460 U.S. 711, 715, 103 S.Ct. 1478, 75 L.Ed.2d 403 (1983). In *Diaz v. Fort Wayne Foundry Corp.,* 131 F.3d 711, 712–13 (7th Cir.1997), we pointed out the unsuitability of the *McDonnell Douglas* framework when there is no basis for comparing the defendant's treatment of the plaintiff with the defendant's treatment of other, similarly situated persons.

The reason the bank—the (principal) defendant—urges adoption of the standard is that it construes it to require that Latimore show not only that she was creditworthy by the bank's standards, which she was, but also that she satisfied the bank's appraiser, which she did not, about the value of her house. There is no question that to be a qualified borrower—the counterpart to a worker who is performing to his employer's satisfaction in the employment discrimination context (an element of the prima facie case that we emphasized in *Coco v. Elmwood Care, Inc., supra,* 128 F.3d at 1179–80)–the plaintiff has to meet the lender's requirements for collateral as well as to establish personal creditworthiness. But Citibank does not require that the borrower satisfy *its* appraiser; it requires only that the appraised value bear a specified relation to the amount of the loan sought, and the opinion of its own appraiser is not conclusive evidence of that value. The bank is willing to consider evidence from other sources and to overrule its own appraiser. The bank's appraisal review department could have overruled Kernbauer; that's why the bank has an appraisal *review* department.

Latimore argues, in her own variant of *McDonnell Douglas* (so strong is the mag-

netic field of that opinion), that all she had to show in order to withstand summary judgment was that her house was in a minority neighborhood, an appraisal (but not necessarily the defendant's) estimated the value of the house to be at least as great as the loan, the plaintiff was creditworthy, yet the loan was rejected. This cannot be right either, and not only because creditors rarely lend up to the value of the collateral and because there is nothing remotely suspicious about the bank's 75 percent rule. Appraisals are fallible, and if banks reposed automatic, unthinking trust in all third-party appraisals they would not employ their own appraisers, as Citibank does. No reasonable suspicion of racial discrimination can arise from the mere fact of a discrepancy between an appraisal conducted by another bank and the appraisal made by Citibank's employee.

Latimore's proposed prima facie case, like the bank's, lacks any comparison between the treatment of blacks and the treatment of whites. At the heart of *McDonnell Douglas* is the idea that if the black is treated worse than the white in a situation in which there is no *obvious* reason for the difference in treatment (such as that the black lacks an essential qualification for the promotion), there is *something* for the employer to explain; and although the competitive situation which invites and facilitates comparison is usually missing from credit discrimination cases, sometimes there will be another basis for comparison. Suppose, for example, that Latimore and Eromital (who is white), apply at roughly the same time for roughly the same-sized loan from the same Citibank office. The two prospective borrowers are equally creditworthy and the collateral they offer to put up is appraised at the same amount. Both applications are forwarded to Ms. Lundberg and she turns down Latimore's application and approves Eromital's. The similarity in the situations of the white and the black would be sufficient to impose on Citibank a duty of explaining why the white was treated better. No effort at making such a comparison was attempted here.

■■ So neither *McDonnell Douglas* nor the kind of *McDonnell Douglas* knock off which we have just sketched (and for which

support can be found in *Simms v. First Gibraltar Bank, supra,* 83 F.3d at 1558) is available here. But that does not end the case. It is always open to a plaintiff in a discrimination case to try to show in a conventional way, without relying on any special doctrines of burden-shifting, that there is enough evidence, direct or circumstantial, of discrimination to create a triable issue. See, e.g., *Trans World Airlines, Inc. v. Thurston,* 469 U.S. 111, 121, 105 S.Ct. 613, 83 L.Ed.2d 523 (1985); *Wallace v. SMC Pneumatics, Inc.,* 103 F.3d 1394, 1399 (7th Cir.1997); *Hill v. Metropolitan Atlanta Rapid Transit Authority,* 841 F.2d 1533, 1539 (11th Cir.1988). And Latimore has tried to do that. She hired an expert to conduct a retrospective appraisal, that is, an appraisal of the value of her home at the time that Citibank appraised it. The expert came in with an appraisal of $62,000. But this gets her nowhere. Under the bank's 75 percent rule, which Latimore doesn't claim to be racially discriminatory, a $62,000 appraisal would not support a $51,000 loan; 75 percent of $62,000 is $46,500 (almost exactly what she got from the other bank, but at a higher interest rate). Real estate appraisal is not an exact science, moreover, and so the fact that Citibank's appraisal was lower than someone else's does not create an inference of discrimination. For all that appears, Citibank uses conservative appraisal methods—perhaps in order to keep interest rates low, for remember that while Latimore did succeed eventually in obtaining a loan on her house, she had to pay a higher interest rate and on a smaller loan than she wanted.

Latimore argues that Citibank exhibited favoritism toward white would-be borrowers. The specific contention is that these white borrowers were similarly situated to Latimore in the sense of wanting loans of the same amount secured by property having the same appraised value, but that Lundberg went out of her way to help them raise the appraised value of their property and she didn't go out of her way to help Latimore. Specifically, when she reported to a white borrower that the appraised value of his property was too low to support the loan he was seeking, she would encourage him to find additional "comparables" (comparable sales) of which the bank's appraiser might not have

known, in order to justify an increase in the appraised value. But remember that when Lundberg informed Latimore of the results of Kernbauer's appraisal, Latimore told her about the other appraisal, and Lundberg urged her to send that in. The fact that Latimore had gotten a higher appraisal implied additional comparables, since appraisals of residential real estate are based on comparable sales. By asking for the higher appraisal, Lundberg was in effect encouraging Latimore to submit additional comparables. It was not Lundberg's fault that they turned out not to satisfy the bank's definition of comparability. She did for Latimore what she did for white people in Latimore's position.

■ One last bit of "evidence" must be considered. It concerns the notes on which Kernbauer based his appraisal. Kernbauer stored them in a filing cabinet in his office. Later the branch in which he worked was closed, and according to Citibank the notes were lost in the turmoil of the closing. The bank retained the report containing the appraisal and produced the report to the plaintiff in the course of discovery proceedings. The notes, along with the report itself, were required to be retained for 25 months after the denial of Latimore's application, 12 C.F.R. § 202.12(b)(1)(i), and the loss of the notes occurred within that period. The violation of a recordretention regulation creates a presumption that the missing record contained evidence adverse to the violator. *Hicks v. Gates Rubber Co.*, 833 F.2d 1406, 1418–19 (10th Cir.1987); *Favors v. Fisher*, 13 F.3d 1235, 1239 (8th Cir.1994). But Citibank's explanation, which was not controverted, showed that the disappearance of Kernbauer's notes was inadvertent, and an inadvertent failure to comply with the regulation is not a violation of it. 12 C.F.R. § 202.14(c). So the presumption did not attach. Cf. *S.C. Johnson & Son, Inc. v. Louisville & Nashville R. Co.*, 695 F.2d 253, 258–59 (7th Cir. 1982).

Taking all the evidence as favorably to the plaintiff as the record permits, no reasonable jury could find that she was turned down because of her race; and so the grant of summary judgment to the defendants must be affirmed. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Seshadri v. Kasraian*, 130 F.3d 798, 804 (7th Cir.1997); *Halperin v. Abacus Technology Corp.*, 128 F.3d 191, 200 (4th Cir.1997).

■ We conclude by registering our displeasure with the plaintiff's decision to join Kernbauer, the appraiser, as a defendant. It is true that the Fair Housing Act imposes liability on "any person" who discriminates. 42 U.S.C. § 3605(a); cf. *Patterson v. P.H.P. Healthcare Corp.*, 90 F.3d 927, 944 (5th Cir. 1996). It is also true that while the Equal Credit Opportunity Act imposes liability only on "creditors" the term may be broad enough to encompass an appraiser, 12 C.F.R. § 202.2(1) (a creditor is "a person who, in the ordinary course of business, regularly participates in the decision of whether or not to extend credit"), though this we need not decide. There is, however, no ground for even a suspicion that Kernbauer's appraisal of Latimore's home was racially motivated. In 1993, the year in which Latimore's application was turned down, Kernbauer appraised the property of 69 blacks, and only two of their applications (besides Latimore's) were turned down, which hardly suggests that Kernbauer is trying to discourage blacks from obtaining Citibank loans. But as the bank's lawyers (representing Kernbauer and Lundberg as well) do not ask for sanctions for the filing of a frivolous claim against Kernbauer, we shall let the matter drop with a warning that this court does not look with favor on the promiscuous joinder of minor employees as defendants in cases against their employers. Cf. *Flip Side Productions, Inc. v. Jam Productions, Ltd.*, 843 F.2d 1024, 1036 (7th Cir.1988).

AFFIRMED.