**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**MAR 9 1999**

**PATRICK FISHER**
**Clerk**

PUBLISH

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

LORNA A. MATTHIESEN,
an individual,

        Plaintiff-Appellant,

v.                                                              No. 98-6069

BANC ONE MORTGAGE
CORPORATION, a Delaware
Corporation,

        Defendant-Appellee.

---

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA
(D.C. No. 97-CV-351)

---

Submitted on the briefs:

Andrew W. Lester, Shannon F. Davies, Lester, Loving & Davies, P.C., Edmond,
Oklahoma, for Plaintiff-Appellant.

Cheryl P. Hunter, Janis W. Preslar, Hall, Estill, Hardwick, Gable, Golden &
Nelson, Oklahoma City, Oklahoma, Steven Alan Bennett, General Counsel,
Matthew M. Julius, National Litigation Counsel, Banc One Corporation,
Dallas, Texas, for Defendant-Appellee.

---

Before **TACHA** , **BARRETT** , and **MURPHY** , Circuit Judges.

---

**TACHA** , Circuit Judge.

_____

Plaintiff-appellant Lorna Matthiesen appeals from the grant of summary judgment by the district court to defendant Bank One Mortgage Corporation (BOMC) on her claims of gender discrimination in a loan application, in violation of the Equal Credit Opportunity Act, 15 U.S.C. § 1691(a) (ECOA), and failure to disclose the sources relied upon to deny her loan application, in violation of the Fair Credit Reporting Act, 15 U.S.C. § 1681(m) (FCRA). In reviewing the grant of summary judgment, we examine the record de novo, applying the same standard as that used by the district court under Fed. R. Civ. P. 56(c). See Kaul v. Stephan , 83 F.3d 1208, 1212 (10th Cir. 1996). Thus, we determine whether the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. See id. Having applied this standard, we affirm. [1]

In early 1996, plaintiff applied for a loan to refinance the mortgage on her home. Included in her initial application were copies of her 1993 and 1994

_____

[1]    After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal.    See Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument.

income tax returns. In her 1993 joint income tax return, plaintiff listed her occupation as "rental properties," and her husband's occupation as "general contractor." The 1993 income tax return reflected no capital gains. Plaintiff's individual 1994 income tax return reflected total income of approximately $22,000, with approximately $15,000 of that amount in capital gains from the sale of investment properties. [2] Plaintiff also submitted a work-copy of her individual 1995 tax return. The work copy reflected total income of approximately $43,000, of which $37,500 was capital gains from the sale of rental properties.

Plaintiff purchased properties, improved them, and sold them for a profit. However, while her loan application was pending, plaintiff had no real estate property for rent or for sale.

Plaintiff's loan application was submitted to BOMC underwriters in Dallas for review. The loan was reviewed using the underwriting guidelines of the Federal National Mortgage Association (FNMA). Plaintiff's application was initially denied because the underwriter was "unable to verify [plaintiff's] income" and because of "insufficient credit file." [3] Appellant's App., Vol. I, tab E at 96. After the initial denial, plaintiff submitted a copy of her 1995 income tax

---

[2]    Plaintiff and her husband were divorced on June 14, 1995.

[3]    The inability to verify income and insufficient (or no) credit file are two of several reasons for denying credit included on the model checklist approved for use by the Board of the Federal Reserve System.    See 12 C.F.R. Pt. 202, App. C.

return and her application was reconsidered but was again denied due to inability to verify her income. See id. at 137.

After both denials, plaintiff received a Statement of Credit Denial, Termination, or Change informing her that the reason her application had been denied was because BOMC was "[u]nable to [v]erify [i]ncome." Appellant's App. Vol. I at 96, 150. The notices additionally informed plaintiff that information was obtained from an "outside source other than a consumer reporting agency." Id.

Fair Credit Reporting Act

Section 1681m(b) of the Fair Credit Reporting Act in effect at the time plaintiff applied for her loan provided in pertinent part:

(b) Adverse action based on reports of persons other than consumer reporting agencies

> Whenever credit for personal, family, or household purposes involving a consumer is denied . . . either wholly or partly because of information obtained from a person other than a consumer reporting agency bearing upon the consumer's credit worthiness, credit standing, credit capacity, character, general reputation, personal characteristics, or mode of living, the user of such information shall, within a reasonable period of time, upon the consumer's written request for the reasons for such adverse action received within sixty days after learning of such adverse action, disclose the nature of the information to the consumer. The user of such information shall clearly and accurately disclose to the consumer his right to make such written request at the

-4-

time such adverse action is communicated to the
consumer.

15 U.S.C. § 1681m(b) (1995).

The parties disagree about whether plaintiff properly requested the identity of the "person other than a consumer reporting agency" who provided information relevant to her application. In any event, it was not until plaintiff took the deposition of one of BOMC's underwriters that she learned that the "outside source[s]" referred to in the denial notices were the tax returns she herself had provided with her application. Plaintiff does not contend that BOMC relied upon information from a third party in denying her loan application but, instead, argues that BOMC's failure to tell her that the denial was based on information obtained from her tax returns violated § 1681m(b).

The district court held that "[i]n the absence of any evidence that BOMC relied on any information provided by a third party, the Court finds the FCRA disclosure requirements do not apply under the facts of this case." Appellant's App. Vol. II, tab P at 12. We agree.

Plaintiff argues that the plain language of the statute supports her position. She contends that the law requires disclosure when information comes from "a person other than a consumer reporting agency," and that she is just such a person. While there are no cases, published or otherwise, discussing this issue,

we conclude that traditional canons of statutory construction dictate the outcome reached by the district court.

The starting point of every statutory construction problem is with the language of the statute itself. *See* Autoskill Inc. v. National Educ. Support Sys., Inc., 994 F.2d 1476, 1484 (10th Cir. 1993). "It is our duty to give effect, if possible, to every clause and word of a statute." United States v. Menasche, 348 U.S. 528, 538-39 (1955) (quotation omitted). Section 1681m(b) requires disclosure of the nature of adverse credit information "[w]henever credit . . . is denied . . . either wholly or partly because of information obtained from a *person* other than a consumer reporting agency bearing upon the *consumer's* credit worthiness . . . ." (Emphasis added). Our focus for purposes of this case are the italicized words "person" and "consumer" in the foregoing quoted clause. We conclude that the use of two different terms, "person" and "consumer," in this clause means that the two cannot be the same entity.

In the definition section accompanying this subchapter to the Consumer Credit Protection Act, "person" is defined broadly to mean "any individual, partnership, corporation, trust, estate, cooperative, association, government or governmental subdivision or agency, or other entity." "Consumer," on the other hand, is defined only as "an individual." *See* 15 U.S.C. § 1681a (b) & (c). Thus, the term "individual" can be identified in only one of two ways: as a person, or

as a consumer. To describe an individual as a "person" reflects the choice *not* to also include that individual in the category reserved for consumers. Therefore, when Congress mandated disclosure where credit is denied on the basis of information "obtained from a person other than a consumer reporting agency," it meant an individual other than a consumer. If this were not the intended meaning, the statute would refer to information "obtained from a person *or a consumer* other than a consumer reporting agency."

In addition to analysis of the statutory language itself, courts look to the purpose and intent of a statute when deciding what its terms mean. See United States v. Shewmaker, 936 F.2d 1124, 1127 (10th Cir. 1991). The purpose of FCRA is to ensure accuracy and fairness in credit reporting and to require that such reporting is confidential, accurate, relevant, and proper. See 15 U.S.C. § 1681. FCRA enables consumers to protect their reputations, see Ackerley v. Credit Bureau of Sheridan, Inc., 385 F. Supp. 658, 659 (D. Wyo. 1974), and to protect themselves against the dissemination of false or misleading credit information, see Conley v. TRW Credit Data, 381 F. Supp. 473, 474 (N.D. Ill. 1974). Information contained in a loan applicant's income tax return should not contain any information that is false or misleading about the applicant. When negative information is gleaned from the consumer's own records, the consumer is aware of that information and no disclosure is necessary. Thus, the protective

purpose of FCRA is not served by requiring a creditor to disclose information that came from the consumer herself.

That this interpretation is the correct one is bolstered by the fact that, shortly after the events giving rise to this case occurred, Congress amended the title to subsection (b) of § 1681m. That title now reads: "Adverse action based on *information obtained from third parties* other than consumer reporting agencies." 15 U.S.C. § 1681m(b) (1998) (emphasis added). While the language of the statute, itself, continues to refer to "information obtained from a person other than a consumer reporting agency," we think the change in the subtitle is some evidence indicating Congressional intent to exclude information from the consumer in this disclosure requirement.

There is no evidence to dispute BOMC's contention that the outside source relied upon in denying the loan was plaintiff's own tax returns. While we agree with the district court that BOMC's checking of the "outside sources" box on the denial notice was confusing, the fact remains that BOMC did not rely on third party or "outside" information in denying plaintiff's loan application. While BOMC could have avoided much of the confusion surrounding this loan application by responding in a timely and courteous manner to plaintiff's inquiry regarding the nature of the "outside sources," its failure to do so did not trigger liability under the statute.

Equal Credit Opportunity Act

Plaintiff's business at the time she applied for the loan was to purchase real property, refurbish it, and then rent or resell it. She alleges that she was discriminated against on the basis of her gender in violation of the Equal Credit Opportunity Act, 15 U.S.C. § 1691-1691(f), because BOMC did not believe that a woman could successfully engage in the real estate construction industry.

The district court analyzed this claim in the same manner as discrimination claims brought under Title VII. Thus, to establish a prima facie case, plaintiff was required to show (1) she is a member of a protected class; (2) she applied for a loan from BOMC; (3) she was qualified for the loan; and (4) despite being qualified her loan application was denied. See Mercado-Garcia v. Ponce Fed. Bank, 979 F.2d 890, 893 (1st Cir. 1992) (applying traditional analysis of McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973), to ECOA case); Moore v. United States Dep't of Agric., 55 F.3d 991, 994 (5th Cir. 1995) (implying that McDonnell Douglas would apply to ECOA case but for fact that plaintiffs had direct evidence of discrimination); but see Latimore v. Citibank Fed. Sav. Bank, 151 F.3d 712, 713-15 (7th Cir. 1998) (rejecting McDonnell Douglas standard in credit context in favor of conventional proof methods).[4] The district court held

_____

[4] The parties do not argue that resort to the McDonnell Douglas burden
(continued...)

-9-

that plaintiff had failed to establish a prima facie case because she had not proven

that she was qualified for the loan.  We agree.

BOMC relied on FNMA underwriting guidelines in evaluating conventional

home loans generally and plaintiff's loan application in particular.

Section 202.04 of those guidelines states:

> A capital gain or loss is generally a one-time
> transaction.  Therefore it should not usually be
> considered as either a gain or loss in determining
> income.  However, if the borrower's business has a
> constant turnover of assets that produces regular gains
> and losses, that capital gain or loss may be considered.
> (An example of this is the person who buys old houses,
> remodels them, and sells them for a profit.)  If the
> borrower has operated in this manner over a period of
> time, the lender may develop an average of the past two
> years' gains or losses for consideration in the income
> calculation.  If this source represents a substantial
> portion of the borrower's income, the lender should
> review tax returns for at least the last three years to get
> an accurate picture of the average earnings from this
> source.  For example, an asset sold during the year might
> be an income-generating asset, resulting in a reduction
> in future income after the sale.

---

[4](...continued)
shifting analysis is improper.  However, as noted above, the Seventh Circuit has
recently rejected that standard in most credit discrimination cases.        See Latimore
v. Citibank Fed. Sav. Bank   , 151 F.3d 712, 713-15 (7th Cir. 1998).  Under either
analysis, however, the plaintiff must demonstrate that he or she was a qualified
borrower in the first place.     See id. at 714;  Moore v. United States Dep't of
Agric. , 55 F.3d 991, 994 (5th Cir. 1995).  Because the resolution of that issue is
determinative here, we do not reach the question of whether the McDonnell
Douglas standard applies in credit discrimination cases.

-10-

R. Vol. II, tab P at 7.  As the district court noted, plaintiff originally presented

two tax returns to BOMC, only one of which, the 1994 return, reflected a capital

gain.  The court reasoned:

> Based on the FNMA guideline, a 2-year capital gain
> average can be used to determine income but three years
> is to be documented and reviewed when a capital gain
> represents a substantial portion of the applicant's
> income.  The capital gains realized by plaintiff and
> reflected on her 1994 tax return and the work-copy of
> plaintiff's 1995 tax return represented a substantial
> portion of her income for those years.  Although the
> draft of the 1995 tax return reflected a capital gain, there
> were still only two years of capital gain, not the three
> recommended under the FNMA guidelines.
> Furthermore, the capital gains reflected on the 1994 and
> 1995 tax returns were generated by the sale of plaintiff's
> income generating rental properties.  Clearly, this would
> affect plaintiff's future income.

Id. at 503.

Plaintiff argues that granting summary judgment to BOMC on the basis of

the above reasoning was error.  She points to the opinion of her expert which she

contends establishes the presence of a material issue of fact regarding whether she

was qualified for the loan.  The district court dismissed the expert's contentions

as "only conclusory allegations."     See id.  We agree.

Plaintiff's expert stated only that plaintiff "qualified under the [FNMA]

guidelines relied upon by Banc One."  R. Vol. I at 283.  He did not, however,

specifically rebut BOMC's conclusion that plaintiff failed to qualify under the

-11-

FNMA guidelines relative to capital gains. Contrary to plaintiff's argument, the testimony of an expert can be rejected on summary judgment if it is conclusory and thus fails to raise a genuine issue of material fact. See Evers v. General Motors Corp., 770 F.2d 984, 985-87 (11th Cir. 1985); cf. Allen v. Muskogee, 119 F.3d 837, 843-44 (10th Cir. 1997) (distinguishing Evers and refusing to disregard an expert's opinion that was based on specific facts in the record).

While the expert testified that plaintiff was qualified under a number of other investor guidelines, plaintiff cannot force BOMC to deviate from its standard practice of relying on the FNMA guidelines in order to accommodate her particular situation. See Beaird v. Seagate Tech., Inc., 145 F.3d 1159, 1169 (10th Cir. 1998) (holding that plaintiff in a RIF case brought under the Age Discrimination in Employment Act could not defeat summary judgment by arguing that she would have been retained if different RIF criteria had been used). Because we agree with the district court that plaintiff has failed to present a prima facie case of gender discrimination under the ECOA, we need not reach plaintiff's arguments regarding pretext or discriminatory motive.

We further agree with the district court that plaintiff's allegedly direct evidence of discrimination is inadequate to defeat BOMC's motion for summary judgment. There is no evidence that the people who commented on her marital

-12-

status and the role of her ex-husband in their real estate rehabilitation business had any responsibility for reviewing or approving her loan applications.

Finally, the district court was also correct to find that plaintiff's statistical evidence did not raise a genuine issue of material fact regarding whether plaintiff had been discriminated against because of her gender. Without evidence that divorced men had not been asked for their divorce records when applying for loans, the evidence is not probative of gender discrimination.

The judgment of the United States District Court for the Western District of Oklahoma is AFFIRMED.