Tyrone J. GREER, Plaintiff–Appellant,

v.

BANK ONE, f/k/a the First National Bank of Chicago and First Chicago, Defendant–Appellee.

No. 01–3769.

United States Court of Appeals, Seventh Circuit.

Submitted Feb. 6, 2002.[1]

Decided Feb. 6, 2002.

Rehearing Denied Feb. 22, 2002.

---

1. After an examination of the briefs and the record, we have concluded that oral argument is unnecessary. Thus, the appeal is submitted on the briefs and the record. *See* Fed. R.App. P. 34(a)(2).

Before BAUER, KANNE, and DIANE P. WOOD, Circuit Judges.

## ORDER

In 2001, after exhausting his administrative remedies, Tyrone Greer sued Bank One (formerly The First National Bank of Chicago and First Chicago) under the Fair Housing Act, 42 U.S.C. § 3601–3631, alleging that it discouraged him from obtaining a home construction loan in 1994 and 1995 by intentionally misdirecting and delaying the processing of his loan application and by imposing unreasonable deadlines for the submission of application materials, all because he is black. The district court granted summary judgment for Bank One, and Greer appeals.

At summary judgment, Bank One offered affidavits in which Loan Officer Valerie Pearson and her supervisor, Dennis Godfrey, explained that Greer himself caused the "delay": though he sought a construction loan to build a "2–flat" residence, he applied for a *mortgage* loan to purchase an existing home. Pearson's lending unit lacked authority to grant "new construction loans," but instead of denying Greer's application outright, she arranged to transfer his application to Bank One's "Neighborhood Lending Division" (NLD), which processed the type of loans Greer sought. Pearson and Godfrey arranged the transfer, which required paperwork and supervisory approval and thus took some time to complete. Pearson then notified Greer that she had transferred his application.

Bank One also submitted an affidavit from David Warner, the Loan Officer who

handled Greer's application once it reached the NLD. Warner's affidavit detailed his meetings and telephone calls with Greer, in which he estimated the amount of the loan Greer could expect to receive and repeatedly asked Greer to provide him with additional information so he could finalize the loan. Bank One also offered letters that Warner sent to Greer, including a "checklist" requesting certain information and a "10 day letter" requiring Greer to submit the requested information within ten days to ensure the continued processing of his loan application. Warner testified that he issued ten-day letters to all applicants regardless of race, and that the sole purpose of the letters was to encourage the timely submission of materials necessary to process loans. Warner also submitted copies of correspondence he sent to other loan applicants of various races for comparison purposes; all of the comparison letters include the ten-day clause and invite the applicant to telephone Warner with any questions. Finally, Warner explained in his affidavit that, after a telephone conversation in which he and Greer discussed Greer's "shortfall" in funding for his construction project, Greer failed to attend a scheduled meeting with Warner and shortly thereafter withdrew his loan application.

■ The district court analyzed the evidence under the *McDonnell Douglas* burden-shifting test, *see McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), ultimately concluding that Greer's withdrawal of his loan application prevented him from satisfying the prima facie case, which according to the court included as an element that Greer was "denied" a loan for which he was qualified. This was incorrect. As we held in *Latimore v. Citibank Federal Savings Bank*, burden-shifting is generally inappropriate in credit discrimination cases because the competitive setting in which one applicant gains at the expense of another–a situation thought "sufficiently suspicious" to shift the burden of proof to the defendant in cases where the disadvantaged applicant is a member of a protected class–is generally not present in the loan context. 151 F.3d 712, 714 (7th Cir.1998) ("A bank does not announce, 'We are making a $51,000 real estate loan today; please submit your applications, and we'll choose the application that we like best and give that applicant the loan.' "). We noted that in rare situations "a variant of the *McDonnell Douglas* standard" might apply in credit discrimination cases, such as where two applicants (one a member of a protected class), equally creditworthy and putting up collateral appraised at the same value, apply "at roughly the same time for roughly the same sized loan from the same [bank] office," have their applications reviewed by the same loan officer, and only the non-protected applicant is granted a loan. *See id.* at 715. Greer made no attempt to show this level of similarity between him and any other loan applicant, so the burden-shifting method of proof was not available to him.

■ Nonetheless, we agree with the district court that summary judgment was appropriate. Greer's chief complaint on appeal is that the district court ignored two categories of documentary evidence: 1) letters sent by loan officer Warner to other applicants; and 2) tables purportedly derived from "Final 1994 HMDA Data" that list by race the number of Bank One loan applicants whose applications were denied as "incomplete," and the number of applicants who withdrew their applications. Regarding the letters, Greer points to perceived indignities in the letters Warner sent to black applicants: they were, in general, shorter, mailed rather than hand-delivered, and "non-cooperative" in tone,

according to Greer. Like the district court, we fail to discern any material differences between the letters. If anything, the letters reflect different factual scenarios for different loan applicants in various stages of the loan approval process; Greer has not explained the circumstances of the recipients of the letters in a way that would permit an attempt at a meaningful comparison.

As for Greer's HMDA data, he offers no insight into its statistical significance, or even an explanation of the categories used in collecting the data. He asserts, for instance, that black applicants withdrew at a higher rate than whites, but doesn't explain what constitutes "withdrawal." Other evidence in the record shows that some applicants withdrew for innocuous reasons–a white/hispanic couple withdrew after deciding to finance their project themselves; two black business partners withdrew after experiencing "internal partnership problems"–so more information is needed to determine whether the "withdrawal" rates support Greer's theory. The relevance of the statistics on denials due to incomplete applications is even less clear because Greer does not argue that Bank One's discrimination resulted in unfair *denials* of loans, only that it led to "constructive" denials by forcing certain applicants to withdraw. In any event, Greer's assertion that the loan denial statistics support an inference of discrimination is incorrect–his table reflects that a *greater* percentage of whites than blacks (1.54% vs. 0.7%) were denied loans due to incomplete applications. Neither item of evidence to which Greer points gives rise to a genuine issue of material fact.

AFFIRMED.