RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION:  2002 FED App. 0028P (6th Cir.)
File Name:  02a0028p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

_____

CHARLOTTE MAYS,
       *Plaintiff-Appellant,*

    *v.*

BUCKEYE RURAL ELECTRIC
COOPERATIVE, INC. and
FREDERICK B. PARKER,
       *Defendants-Appellees.*

No. 00-3918

Appeal from the United States District Court
for the Southern District of Ohio at Cincinnati.
No. 98-00655—Susan J. Dlott, District Judge.

Argued:  October 26, 2001

Decided and Filed:  January 22, 2002

Before:  JONES and CLAY, Circuit Judges; DOWD,
District Judge.[*]

_____

[*] The Honorable David D. Dowd, Jr., United States District Judge for the Northern District of Ohio, sitting by designation.

1

_____

**COUNSEL**

**ARGUED:**    Gary M. Smith, EQUAL JUSTICE FOUNDATION, Columbus, Ohio, for Appellant. William R. Case, THOMPSON, HINE & FLORY LLP, Columbus, Ohio, for Appellees. **ON BRIEF:** Gary M. Smith, Kimberly M. Skaggs, EQUAL JUSTICE FOUNDATION, Columbus, Ohio, for Appellant.    William R. Case, Michael N. Beekhuizen, THOMPSON, HINE & FLORY LLP, Columbus, Ohio, for Appellees.

_____

**OPINION**

_____

CLAY, Circuit Judge.  Plaintiff, Charlotte Mays, appeals from the district court's order dismissing Plaintiff's claims of discrimination on the basis of marital status, pursuant to the Equal Credit Opportunity Act, 15 U.S.C. § 1691(a)(1), and provisions of Regulation B of the Equal Credit Opportunity Act, 12 C.F.R. § 202; deprivation of "due process and natural justice;" and violations of Ohio statutes and common law. For the reasons set forth below, we **AFFIRM IN PART, VACATE IN PART, AND REMAND** with instructions to dismiss without prejudice Plaintiff's claim of a deprivation of due process and natural justice.

**BACKGROUND**

Defendant Buckeye Rural Electric Cooperative, Inc. ("Buckeye"), a non-profit cooperative electrical utility, is the exclusive provider of electricity in nine counties in southeastern Ohio.    Defendant Buckeye's electricity customers are members of the corporation and elect Buckeye's governing board of trustees. Defendant Frederick B. Parker is Buckeye's vice president of finance.

At no point did the magistrate judge or the district court address Plaintiff's advanced (and perhaps novel) due process deprivation theory. Plaintiff clearly had no intention to invoke federal constitutional rights, and the district court erred in granting summary judgment on Plaintiff's "due process and natural justice" claim solely pursuant to a Fourteenth Amendment analysis.

Because we have concluded that the district court properly granted summary judgment on Plaintiff's claims arising under federal statutes and regulations, there remains no independent basis for federal subject matter jurisdiction over this litigation. In dismissing without prejudice four other claims Plaintiff had asserted under Ohio statutes and common law, the district court recognized the absence of federal claims and declined to exercise supplemental jurisdiction for this reason pursuant to 28 U.S.C. § 1367(c)(3). We do not believe the district court abused its discretion in declining supplemental jurisdiction over Plaintiff's state law claims, and we have no reason to believe the district court would choose to exercise jurisdiction over Plaintiff's "due process and natural justice" deprivation claim alone. *Cf. Brandenburg v. Housing Auth. of Irvine*, 253 F.3d 891, 900 (6th Cir. 2001) ("In fact, the usual course is for the district court to dismiss the state-law claims without prejudice if all federal claims are disposed of on summary judgment."). We will therefore remand Plaintiff's "due process and natural justice" claim (Count VIII of Plaintiff's complaint) to the district court with instructions to dismiss it without prejudice.

## CONCLUSION

For the above reasons, we **AFFIRM** the district court's order granting summary judgment on Plaintiff's statutory and regulatory claims of credit discrimination on the basis of marital status. We **VACATE** the district court's entry of summary judgment on Plaintiff's claim of a deprivation of due process and natural justice (Court VIII of Plaintiff's complaint), and **REMAND** for entry of an order dismissing that claim without prejudice.

In 1987, while Plaintiff was married to Larry Mays ("Mays"), Mays sought electricity service from Defendants. Defendants supplied Plaintiff and Mays with a membership application form. Describing itself as a "joint use application," the form required "husband and wife" to complete it and provided separate lines for the signatures and social security numbers of "Applicant" and "Spouse." Mays signed as "Applicant" and Plaintiff signed as "Spouse." After accepting the application for service, Defendants addressed electricity bills to "LARRY E MAYS."

In October of 1997, Plaintiff filed for divorce from Mays. Mays then moved out of the couple's home and into a camper located on the jointly-owned real estate. Mays supplied electricity to the camper via extension cords connecting the camper with the home. While living in the camper, Mays began neglecting work and failing to pay bills. By January of 1998, the account serving the home and camper was in arrears and Defendants disconnected electricity service. Within a month, Plaintiff secured a restraining order against Mays and forced him to leave the property. Plaintiff, who had never worked outside the home, then obtained gainful employment.

On March 10 or 11, 1998, about two months after Defendants disconnected service, Plaintiff sought to establish an individual account with Defendants and restore electricity to the home. Plaintiff telephoned Defendants and learned she could not restore service to the home until the entire outstanding balance on the disconnected account was satisfied. Defendants later informed Plaintiff she could obtain an individual account without satisfying the outstanding balance if she documented her separation or divorce from Mays and documented Mays' individual responsibility for the disconnected account.

On September 2, 1998, Plaintiff filed suit against Defendants for discrimination on the basis of marital status in violation of the Equal Credit Opportunity Act ("ECOA"), 15 U.S.C. § 1691(a)(1), and provisions of Regulation B of the ECOA, 12 C.F.R. §§ 202.5(c) and (d); 202.9(a), (b), and (c);

and 202.7(a), (b), and (d).[1]  Plaintiff also asserted a due process deprivation claim and claims arising under Ohio statutes and common law, and sought certification of the litigation as a class action pursuant to Fed. R. Civ. P. 23(a) and 23(b)(2).

On November 5, 1998, Defendants moved to dismiss all of Plaintiff's claims pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6).  On January 6, 2000, Magistrate Judge Timothy S. Hogan issued a Report and Recommendation regarding Defendants' dispositive motion.  Because Plaintiff and Defendants had filed evidentiary materials outside the pleadings, the magistrate judge treated the motion to dismiss as a motion for summary judgment pursuant to Fed. R. Civ. P. 56. The magistrate judge recommended granting summary judgment in favor of Defendants on Plaintiff's ECOA and due process claims, and declining to exercise subject matter jurisdiction over Plaintiff's claims under Ohio law pursuant to 28 U.S.C. § 1367. The magistrate judge reasoned summary judgment was proper because:  (1) the regulations Plaintiff relied upon for the ECOA claims exempted Defendants from compliance; (2) Plaintiff could not assert claims arising out of signing an electricity service application in 1987 because the two-year statute of limitations of 15 U.S.C. § 1691e(f) had run; and (3) Defendants' actions did not constitute "state action" for due process purposes.  The magistrate judge did not address Plaintiff's motion for class certification.

On June 20, 2000, the district court issued an order adopting the recommendations of the magistrate judge.  The district court granted Defendants' motion to dismiss as to Plaintiff's claims arising under the ECOA, Federal Reserve Board regulations, and due process, and dismissing without prejudice Plaintiff's claims arising under Ohio statutes and

---

[1] In September of 1998, after Plaintiff filed her complaint in this action, Defendants established an individual account in Plaintiff's name and, after Plaintiff paid the membership fee and deposit, restored electricity service to Plaintiff's home.  Defendants did not require Plaintiff to pay the outstanding balance on the disconnected account.

conclusion does not warrant summary judgment on Plaintiff's claim arising out of "due process and natural justice."

As a threshold matter, Plaintiff did not plead her due process claim pursuant to 42 U.S.C. § 1983, the statutory authorization for claims of deprivations of federal constitutional rights.  At no point in her complaint does Plaintiff mention § 1983, which is noteworthy when compared to her extensive and meticulous citation of provisions of the ECOA and implementing regulations. Plaintiff's failure to raise § 1983 explicitly in her complaint might not necessarily preclude a federal constitutional claim in all circumstances, but in this case it is clear that Plaintiff did not intend to assert a claim under the federal Constitution.

Although Plaintiff's utilizing the term "due process" would appear to implicate federal constitutional rights, Plaintiff has consistently attempted to clarify that her claim of a deprivation of "due process and natural justice" is derived from the common law of Ohio and other states.  Plaintiff's initial response in opposition to Defendants' motion to dismiss discusses her "due process and natural justice" claim entirely in the context of common law rights and interests incident to the receipt or denial of utility services.  After the magistrate judge issued his summary judgment recommendation, one of Plaintiff's grounds for objection was that the magistrate judge had misconstrued her due process claim as arising under the Constitution.  Plaintiff explained that her "due process and natural justice" claim involved not constitutional rights but a duty imposed on utility companies under the common law.  She stated that she had "never asserted that defendants were state actors, or that the Fourteenth Amendment was the source of this duty, or even that the duty was the equivalent to constitutional due process." (J.A. at 137.)  In arguments to this Court, Plaintiff continues to characterize her theory of deprivation of due process as arising out of the common law, rather than the federal Constitution.

spouse without any prior, contemporaneous, or subsequent indication of the spouse's assent to the debt. By fundamental contrast, the facts of this case, as alleged in Plaintiff's complaint and substantiated in the record, concern denial of individual credit based on an existing debt for which, as a signatory on the account application, Plaintiff had objectively demonstrated acceptance of some degree of financial responsibility.

Under the specific facts of this litigation, resolution of Plaintiff's ECOA claims would inextricably turn on an evaluation of Defendants' requiring Plaintiff to sign the membership application in 1987. Plaintiff therefore had until 1989 to bring her ECOA claims against Defendants. Plaintiffs claims under 15 U.S.C. § 1691(a)(1), and 12 C.F.R. § 202.7(a) and (b), brought in a complaint filed in 1998, are time-barred.

## II.  DUE PROCESS DEPRIVATION

In the absence of state action, a plaintiff may not assert a due process claim under the Fourteenth Amendment. *See Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 50 (1999); *see also Blackard v. Memphis Area Med. Center for Women, Inc.*, 262 F.2d 568, 579 (6th Cir. 2001) ("The requirement that there be state action in the context of constitutional violations refers to government action – state or federal – as opposed to private action."). A private utility company such as Defendant Buckeye does not amount to a state actor, even if the utility possesses a monopoly over the provision of a service, for Fourteenth Amendment purposes. *Jackson v. Metro. Edison Co.*, 419 U.S. 345, 358 (1974). The district court applied these principles in granting summary judgment in favor of Defendants on Plaintiff's due process claim.

We do not quarrel with the district court's substantive legal conclusion that Plaintiff cannot maintain a federal constitutional due process deprivation claim in the absence of state action. Our examination of Plaintiff's complaint and arguments in the district court, however, reveals that this legal

common law. The district court did not rule on Plaintiff's motion for class certification.

## DISCUSSION

### I. ECOA CLAIMS

The ECOA prohibits creditors from discriminating against any credit applicant "with respect to any aspect of a credit transaction . . . on the basis of race, color, religion, national origin, sex, or marital status." 15 U.S.C. § 1691(a)(1). As an entity granting members the ability "to defer payment of a debt or to incur debts and defer its payment or to purchase property or services and defer payment therefor," Defendant Buckeye is a "creditor" within the meaning of the ECOA. 15 U.S.C. § 1691a(d); *Barney v. Holzer Clinic, Ltd.*, 110 F.3d 1207, 1209 (6th Cir. 1997) (quoting statutory definition of credit); *see also Shaumyan v. Sidetex Co., Inc.*, 900 F.2d 16, 18 (2d Cir. 1990) ("Absent a right to defer payment for a monetary debt, property or services, the ECOA is inapplicable."). "The purpose of the ECOA is to eradicate credit discrimination waged against women, especially married women whom creditors traditionally refused to consider for individual credit." *Anderson v. United Fin. Co.*, 666 F.2d 1274, 1277 (9th Cir. 1982) (citing *Markham v. Colonial Mortgage Serv. Co., Assocs., Inc.*, 605 F.2d 566, 569 (D.C. Cir. 1979)).

Given the similar purposes of the ECOA and Title VII, the burden-allocation system of federal employment discrimination law provides an analytical framework for claims of credit discrimination. *See Lewis v. ACB Bus. Servs., Inc.*, 135 F.3d 389, 406 (6th Cir. 1998); *see also Rosa v. Park West Bank & Trust Co.*, 214 F.3d 213, 215 (1st Cir. 2000) (looking to Title VII in construing the ECOA). *But see Latimore v. Citibank Fed. Sav. Bank*, 151 F.3d 712, 715 (7th Cir. 1998) (refusing to apply *Burdine /McDonnell Douglas*[2]

---

[2]*Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 252-53 (1981); *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973).

burden-shifting framework to ECOA cases). Under this analytical framework, Plaintiff can establish a *prima facie* case of credit discrimination by showing: (1) Plaintiff was a member of a protected class; (2) Plaintiff applied for credit from Defendants; (3) Plaintiff was qualified for the credit; and (4) despite Plaintiff's qualification, Defendants denied her credit application. *See, e.g.*, *Matthieusen v. Banc One Mortgage Corp.*, 173 F.3d 1242, 1246 (10th Cir. 1999).

In concluding Plaintiff could not establish a *prima facie* case of credit discrimination on the basis of marital status pursuant to this framework, the magistrate judge effectively focused on the absence of the first element: Plaintiff's membership in a protected class. Rather than directly stating Plaintiff had failed to satisfy this element, however, the magistrate judge concluded that many of the Federal Reserve Board regulations named in Plaintiff's complaint exempted Defendants from compliance. In other words, Plaintiff could not show she was a member of a protected class because the Federal Reserve Board regulations establishing certain of her claims did not apply to Defendants. Specifically, the magistrate judge determined that Defendants provide "incidental credit" as defined in 12 C.F.R. § 202.3(c)(1), and were therefore entitled to exemptions listed in § 202.3(c)(2). Summary judgment, the magistrate judge recommended, would be appropriate on Plaintiff's claims brought pursuant to regulations for which § 202.3(c)(2) provided compliance exemptions. The magistrate judge also recommended summary judgment on Plaintiff's statutory and regulatory claims outside the exemption provisions, concluding that the two-year statute of limitations of 15 U.S.C. § 1691e(f) barred those claims.

Although the magistrate judge addressed Defendants' motion to dismiss Plaintiff's claims in summary judgment terms, the district court, in adopting the magistrate judge's recommendations, did not specifically grant summary judgment. Instead, the district court characterized its order as granting Defendants' motion to dismiss as to Plaintiff's claims arising under federal law, and dismissing without

the limitations period on Plaintiff's claims, we will therefore look to the specific ECOA and regulatory violations (for which an exemption does not apply) that Plaintiff alleges caused her injury.

Plaintiff alleges that Defendants took adverse credit action against her in 1998 by refusing to open an individual account for her, in violation of 12 C.F.R. § 202.7(a), and by refusing to allow her to open or maintain an account under a different surname, in violation of § 202.7(b). Plaintiff's complaint alleges that Defendants refused to take these actions because of the outstanding debt existing on the account Mays and Plaintiff opened in 1987. The magistrate judge viewed these actions as the continuing effects of Defendants' obligating Plaintiff to sign the account application eleven years earlier.

A "denial or revocation of credit" is one type of adverse action pursuant to the ECOA. 15 U.S.C. § 1691(d)(6); *Lewis*, 135 F.3d at 406 (quoting statutory language). 12 C.F.R. § 202.2(c) defines "adverse action" for purposes of Regulation B, and includes a creditor's refusal to extend credit as one of several manifestations of adverse action. 12 C.F.R. § 202.2(c)(1)(i). The allegations of Plaintiff's complaint, Plaintiff's representations in an affidavit, and the affidavit testimony of Defendant Parker all demonstrate that Defendants refused to open an individual account for Plaintiff because of the arrearage on the existing account. Plaintiff joined Mays in signing the application for electrical service in 1987. Plaintiff's failed attempts in early 1998 to establish an electrical service account arose out of her owing money from the prior account, a result of the allegedly discriminatory requirement that she sign the credit application in 1987.

This case does not present, for instance, the situation where a utilities creditor denied an individual account because a spouse or former spouse was merely living in a home served by a delinquent former account opened by the other spouse. This case also does not present the situation where a utilities creditor denied an account for service to a spouse or former spouse because of an outstanding debt incurred by the other

satisfied the three essential elements for incidental credit. *Id*. at 1145-47 & n.1. According to the *Williams* court, the cellular telephone company qualified as an incidental creditor under 12 C.F.R. § 202.3(c) because its credit transactions did not involve credit card accounts, finance charges, or installment payments. *Id*. at 1147. As an incidental creditor, the defendant cellular phone company was due the compliance exemptions of § 202.3(c)(2).

We agree with the analysis of the *Williams* court, the same analysis applied by the magistrate judge and advanced by Defendants in the instant case. Defendants' credit extensions satisfy the three elements for "incidental credit," and Defendants are therefore exempt from compliance with the following provisions, undergirding all or part of several of Plaintiff's claims: 12 C.F.R. §§ 202.5(c) and (d); 202.7(d); and 202.9(a), (b), and (c). We conclude that the district court properly granted summary judgment for Defendants on Plaintiff's claims, or the portions of those claims, brought pursuant to these sections of Regulation B.

**B.    Two-Year Statute of Limitations**

Claims under the ECOA and its implementing regulations are subject to a two-year statute of limitations. 15 U.S.C. § 1691e(f). Courts construing the ECOA's limitations period have concentrated their attention on the discriminatory conduct giving rise to a statutory or regulatory claim. *See, e.g.*, *Ramsdell v. Bowles*, 64 F.3d 5, 9 (1st Cir. 1995); *Farrell v. Bank of N.H.-Portsmouth*, 929 F.2d 871, 873-74 (1st Cir. 1991); *Riggs Nat'l Bank of Wash., D.C. v. Webster*, 832 F. Supp. 147, 151 (D. Md. 1993); *Stern v. Esposito Santo Bank of Fla.*, 791 F. Supp. 865, 868-69 (S.D. Fla. 1992). The general thrust of these cases, as stated by the Supreme Court of Iowa, is: "The statute's focus is upon the time of discriminatory actions, not at the time at which the consequences of the action become painful." *Marine Am. State Bank of Bloomington, Ill. v. Lincoln*, 433 N.W.2d 709, 712 (Iowa 1988) (citing cases interpreting federal employment discrimination laws). To determine the effect of

prejudice Plaintiff's claims arising under state law. Because the district court and the magistrate judge looked to materials beyond Plaintiff's complaint in ruling on Defendant's motion to dismiss, the district court's dismissal of Plaintiff's federal-law claims amounted to granting summary judgment. *See* Fed. R. Civ. P. 12(b) (where district court considers matters outside the pleadings in ruling on a motion to dismiss, the district court should treat the motion as one for summary judgment). We shall therefore construe the district court's order as granting summary judgment in Defendants' favor on Plaintiff's federal law claims. *See, e.g.*, *Talley-Bey v. Knebl*, 168 F.3d 884, 885 (6th Cir. 1999); *Fugarino v. Hartford Life & Accident Ins. Co.*, 969 F.2d 178, 182-83 (6th Cir. 1992).

We review the district court's decision to grant summary judgment *de novo*. *White Consol. Indus., Inc. v. Westinghouse Elec. Corp.*, 179 F.3d 403, 407 (6th Cir. 1999). The district court should grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).

**A.    Exemptions for Incidental Credit**

Three of the claims for relief in Plaintiff's complaint allege violations of provisions of Regulation B, the series of Federal Reserve Board regulations implementing the ECOA. Section 202.4 of Regulation B provides the general rule against credit discrimination "against an applicant on a prohibited basis." 12 C.F.R. § 202.4. Subsequent sections of Regulation B prohibit specific acts or omissions by creditors in relation to extensions or denials of credit.

Plaintiff claims that Defendants violated 12 C.F.R. § 202.5(c) and (d) by using information about Mays and his individual credit-worthiness to evaluate Plaintiff's credit-worthiness and eligibility for her own utilities account. Plaintiff next claims that Defendants violated 12 C.F.R. § 202.9(a), (b), and (c) by failing to provide her with notice of

adverse credit action. Plaintiff also claims that Defendants' actions violated three portions of 12 C.F.R. § 202.7: § 202.7(a)'s prohibiting creditors from denying individual credit accounts on the basis of marital status; § 202.7(b)'s prohibiting creditors from refusing to allow a credit applicant to designate the name to be placed on an account (such as a prior surname); and § 202.7(d)'s prohibiting creditors from requiring another person's signature on a credit application, except in the case of joint application.

Section 202.3 of Regulation B renders certain regulatory provisions inapplicable to several types of credit transactions. Extensions of one of these transaction types, incidental credit, need not comply with the following provisions of Regulation B, most of which are implicated in Plaintiff's complaint:

   (i)   Section 202.5(c) concerning information about a spouse or former spouse;

   (ii)   Section 202.5(d)(1) concerning information about marital status;

   (iii)   Section 202.5(d)(2) concerning information about income derived from alimony, child support, or separate maintenance payments;

   (iv)   Section 202.5(d)(3) concerning information about the sex of an applicant, but only to the extent necessary for medical records or similar purposes;

   (v)   Section 202.7(d) relating to the signature of a spouse or other person;

   (vi)   Section 202.9 relating to notifications . . . .

12 C.F.R. § 202.3(c)(2). Extensions of incidental credit are extensions other than for "public utilities credit" and "securities credit,"[3] and are: (1) not made pursuant to terms

---

[3]Extensions of "public utilities credit," involve the provision of utility services by an entity required to file its rates with a government agency, *see* § 202.3(a)(1), and extensions of "securities credit," involve transactions subject to the securities laws, *see* § 202.3(a)(1). The parties agree that Defendants' credit extensions do not qualify as "public utilities" credit because Defendants are not obligated to file their rates

of a credit card account; (2) not subject to a finance charge, as defined in § 226.4; and (3) not payable in more than four installments by agreement. § 202.3(c)(2). According to an affidavit provided by Defendant Parker, Defendant Buckeye has no credit card accounts, does not permit installment payments for electrical service, and does not impose finance charges. Plaintiff offers little probative evidence disputing Defendants' satisfaction of the three elements for incidental credit, and we conclude that Defendants' extensions of credit are within the terms of § 202.3(c)(1).

To the extent that Plaintiff suggests Defendants impose a "finance charge" by assessing a ten percent penalty on past-due bills, this late penalty is expressly excluded from the regulatory definition of "finance charge." Among the types of charges excluded from the "finance charge" definition in 12 C.F.R. § 226.4(c), the section to which § 202.3(c)(1) refers, are "[c]harges for actual unanticipated late payment, for exceeding a credit limit, or for delinquency, default, or a similar occurrence." § 226.4(c)(2). Defendants' ten percent late penalty falls within this exclusion, rendering the penalty outside the meaning of "finance charge."

In *Williams v. AT&T Wireless Servs., Inc.*, 5 F. Supp. 2d 1142 (W.D. Wash. 1998), the Western District of Washington reached a similar conclusion when it analyzed a cellular telephone company's compliance obligations under the ECOA. The court likened the provision of cellular telephone service to the provision of gas, electricity, and water, noting that consumers in all four cases incur debt as they use the services and receive periodic bills for the services used. *Williams*, 5 F. Supp. 2d at 1145. The court concluded that cellular telephone companies, like utility companies, provide credit to their customers within the meaning of the ECOA. *Id*. The court distinguished the defendant's activities from public utility credit because its rates were not subject to government regulation, but concluded that the defendant

---

with any governmental entity.