Paul BORMAN, Plaintiff–Appellant,

v.

The **GREAT ATLANTIC & PACIFIC TEA CO., INC., d/b/a A&P, a Maryland corporation, and Borman's, Inc., a Delaware corporation, Defendants–Appellees.**

No. 02–2110.

United States Court of Appeals, Sixth Circuit.

May 22, 2003.

Before KRUPANSKY, SILER, and GILMAN, Circuit Judges.

KRUPANSKY, Circuit Judge.

The plaintiff-appellant Paul Borman ("Borman") has contested the district court's dismissal, without prejudice, of his federal judicial complaint anchored in the Employee Retirement Income Security Act of 1974, as amended, 29 U.S.C. § 1001 *et seq.* ("ERISA") against his employers, defendants-appellees Great Atlantic & Pacific Tea Company ("A&P") and its subsidiary Borman's Inc. ("BI") (collectively "the defendants"), for failure to exhaust predicate corporate internal administrative remedies. *See Fallick v. Nationwide Mutual Ins. Co.,* 162 F.3d 410, 418 & n. 4 (6th Cir.1998); *Miller v. Metropolitan Life Ins. Co.,* 925 F.2d 979, 986 (6th Cir.1991). On review, Borman has mounted two principal arguments: (1) that the trial court erred by concluding that his complaint lacked legally sufficient allegations to support the requisite ERISA element of predicate administrative exhaustion; and (2) alternatively, that the district court allegedly abused its discretion by declining to excuse the plaintiff's failure to exhaust administrative procedures, either because his pursuance of internal remedies purportedly would be futile, or because the defendants assertedly failed to seasonably inform him

about those administrative claims procedures.

Borman had served as the President and Chief Executive Officer of BI until its 1988 purchase by, and merger with, A&P. On approximately December 23, 1988, Borman and A&P executed two written instruments that would govern Borman's future relationship with A&P and its new subsidiary BI. The "Employment Agreement" stipulated, among other things, that Borman would serve as Chairman of both BI and A&P's Midwestern Division until January 31, 1999, in exchange for a $500,000 minimum annual salary plus "such other perquisites as befits a chief executive officer of a publicly traded company." The "Consulting and Non–Competition Agreement" provided *inter alia* that, effective February 1, 1999, the defendants would furnish Borman, for the remainder of his life, with (1) a $150,000 annual salary, plus an additional $350,000 for each of that contract's first five years if he refrained from any competitive employment; (2) "such other perquisites as befits a chief executive officer of a publicly traded company;" and (3) the identical "pension and medical insurance benefits generally available to salaried A&P employees."

■ Via the plaintiff's January 22, 2001 four-count unverified complaint, which respectively stated three ERISA counts plus one pendent state law claim, he averred that the defendants failed to honor certain of those contractual obligations, by, among other things, allegedly excluding him from participation in certain pension or medical benefit plans available to other salaried A&P employees, and/or by failing to provide him with allegedly promised perquisites (including benefits distributed through ERISA plans) that purportedly befit his station as the CEO of a publicly traded corporation. The plaintiff's Prayer for Relief requested, among other things, "recovery by Plaintiff of all benefits due to him under all applicable benefit [sic—benefit plans?], including deferred compensation, stock options, and medical, life insurance and other health and welfare benefits due to him under all applicable benefit plans, with interest, pursuant to 29 U.S.C. § 1132(a)(1)(B)."[1]

On March 27, 2001, the defendants moved to dismiss Borman's complaint, arguing, among other things, that the plaintiff had preliminarily failed to exhaust available internal benefit claim and review procedures created by A&P in conformity with ERISA requirements. *See* 29 U.S.C. § 1133; 29 C.F.R. § 2560.503–1. Via affidavit, A&P's Director of Benefits William J. Eckert ("Eckert") stated that, in accordance with established written company procedures, dissatisfied benefit claimants

---

1. That *section postulates:* "A civil action may be brought by a participant or beneficiary to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B). Accordingly, contrary to the plaintiff's posture, a juridical action to resolve a plaintiff's claimed *entitlement to participation* in an ERISA plan is subject to the identical predicate administrative claim and review exhaustion requirements, evolved herein, as a claim for *unpaid ERISA benefits* instituted by an undisputed participant in the plan. *See Firestone Tire & Rubber Co. v. Bruch,* 489 U.S. 101, 117–18, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989) (mandating that a claim of plan participant status is actionable under ERISA); 29 U.S.C. § 1002(7) (defining a plan "participant" to include any person "who is or may become eligible to receive a benefit of any type from an employee benefit plan."); 29 C.F.R. § 2560.503–1(m)(4) (directing that an "adverse benefit determination" includes "a denial, reduction, or termination of, or a failure to provide or make payment (in whole or in part) for, a benefit, including any such denial, reduction, termination, or failure to provide or make payment that is based on a determination of a participant's or beneficiary's eligibility to participate in a plan.").

should initially submit their disputed claims to Eckert; those claims would ultimately be reviewed by A&P's Pension Committee for final administrative resolution.[2] Eckert's affidavit further disclosed that, prior to Borman's judicial action, the

plaintiff had neglected to proffer any of his subject ERISA benefit claims to either Eckert or the Pension Committee. *See* 29 C.F.R. § 2560.503–1(e) ("[A] claim for benefits is a request for a plan benefit or benefits made by a claimant *in accordance*

2. A&P's written ERISA Claim and Appeal Procedures were substantially similar for each of its subject benefit plans, with one key variation. Whereas procedures for most plans administered by A&P, such as its Supplemental Executive Retirement Plan, mandated that the claimant should direct his or her initial benefit claim to the A&P Director of Benefits (Eckert), the procedures for at least one A&P benefit plan, which was administered by an insurance company, namely A&P's Executive Medical Plan, required that the claimant submit his or her initial claim to the pertinent insurance carrier. However, in the Claim and Appeal Procedures for each of A&P's benefit plans, similar provisions governed review of disputed claims, initially by the Director of Benefits and ultimately by the Pension Committee. By way of illustration, the Claim and Appeal Procedure for A&P's Executive Medical Plan provided, in material part:

   II. APPEALS TO DIRECTOR OF BENEFITS

   A. The claimant or his authorized representative shall have 60 days after receipt of written notification of the denial [by the insurer] of a claim to request review of the denial by making written request to the Director of Benefits of The Great Atlantic & Pacific Tea Company (the "Director") and may review pertinent documents and may submit issues and comments in writing.

   B. Not later than 60 days from receipt of the appeal, the Director shall render and furnish to the claimant a written decision which shall include specific reasons for the decision, and shall make specific references to the pertinent Plan provisions on which it is based.

   C. If special circumstances require an extension of time for processing, the decision shall be rendered as soon as possible, but not later than 120 days after receipt of the request for review (appeal), provided that written notice and explanation of the delay are given to the claimant prior to commencement of the extension.

   D. Such decision by the Director shall be subject to further review by the Pension Committee if requested by the claimant. If a decision on review is not furnished to a claimant within the specified time period, the claim shall be deemed to have been denied on review.

   III. APPEAL TO THE PENSION COMMITTEE

   A. The claimant or his authorized representative shall have 60 days after receipt of written notification of the denial of a claim to request review of the denial by making written request to the Pension Committee and may review pertinent documents and submit issues and comments in writing within such 60 day period.

   B. The Pension Committee shall have and shall exercise full discretionary authority to construe, interpret and apply all of the terms of the Plan, including all matters relating to eligibility for benefits, amount, time or form of benefits, and any disputed or allegedly doubtful terms. In exercising such discretion, the Pension Committee shall give controlling weight to the intent of the sponsor of the Plan.

   C. Not later than 60 days from receipt of the appeal, the Pension Committee shall render and furnish to the claimant a written decision which shall include specific reasons for the decision, and shall make specific references to the pertinent Plan provisions on which it is based. If special circumstances require an extension of time for processing, the decision shall be rendered as soon as possible, but not later than 120 days after receipt of the appeal, provided that written notice and explanation of the delay are given to the claimant prior to commencement of the extension. If a decision on review is not furnished to a claimant within the specified time period, the claim shall be deemed to have been denied on review.

   D. The decision of the Pension Committee shall be final and binding on the Plan, the plan sponsor and all participants and beneficiaries.

*with a plan's reasonable procedure for filing benefit claims."*). (Emphasis added).

Instead, Borman vaguely alleged in his complaint that he had engaged in a "lengthy period" of fruitless discussions concerning his benefit claims in controversy, and had filed some sort of unspecified claim, with unnamed officers of A&P. He has further asserted that the defendants had not timely informed him of the available internal claim and review procedures, nor had they referred him to the Pension Committee. However, in the trial court, Borman filed no affidavit nor produced any other evidence in opposition to the Eckert affidavit and the documents offered by the defendants in support of their motion to dismiss the complaint. Most importantly, Borman failed to evince, or even allege, that he had made any effort to adhere to A&P's formal written internal benefit claim and review procedures, or had even inquired of any A&P agent about those procedures.

■■■ On July 9, 2001, the trial judge dismissed Borman's entire complaint without prejudice on the basis that Borman

had failed to exhaust his available administrative remedies.[3] Nonetheless, when extraordinary circumstances are presented, the trial court may, in its sound discretion,[4] *excuse* a plaintiff's failure to satisfy the administrative exhaustion requirement. *Fallick v. Nationwide Mutual Ins. Co.*, 162 F.3d 410, 418–21 (6th Cir.1998); *Costantino v. TRW, Inc.*, 13 F.3d 969, 974–75 (6th Cir.1994). Concordantly, as in the case *sub judice*, the presiding judge, in his or her sound discretion, may instead elect to *dismiss the ERISA causes of action without prejudice* because of the complainant's failure to discharge procedural requisites,[5] thereby allowing the plaintiff an opportunity to correct those procedural defects by invoking the available intra-company claim dispute resolution mechanism, which in turn will empower the employer's administrative claim and review apparatus to potentially settle the conflict without recourse to the judicial system. *See Ravencraft v. UNUM Life Ins. Co.*, 212 F.3d 341, 344 (6th Cir.2000).

■■■ This reviewing court has carefully and thoroughly studied the lower court's

(Bracketed material added).

3. The district court relied on the Eckert affidavit only to the extent that the affidavit's exhibits disclosed the terms of the ERISA plans at issue. This reliance was proper under Rule 12 of the Federal Rules of Civil Procedure, and did not require the conversion of the defendants' motion to dismiss into one for summary judgment, because the ERISA plans were central to Borman's complaint. "[D]ocuments that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to her claim." *Weiner v. Klais & Co., Inc.* 108 F.3d 86, 89 (6th Cir.1997).

4. Matters reserved to the district court's sound discretion are reviewed for abuse. "Abuse of discretion is defined as a definite and firm conviction that the trial court committed a clear error of judgment." *Soberay Machine & Equipment Co. v. MRF Ltd., Inc.*,

181 F.3d 759, 770 (6th Cir.1999) (*quoting Bowling v. Pfizer, Inc.*, 102 F.3d 777, 780 (6th Cir.1996)). Alternatively, an abuse of discretion by a district court will be found "when it relies on clearly erroneous findings of fact, or when it improperly applies the law or uses an erroneous legal standard." *Graham–Humphreys v. Memphis Brooks Museum of Art*, 209 F.3d 552, 560 (6th Cir.2000) (brackets omitted) (*quoting Romstadt v. Allstate Ins. Co.*, 59 F.3d 608, 615 (6th Cir.1995)).

5. Although Borman's pleading defect at issue technically tainted only his three ERISA causes of action, the trial jurist, in her sound discretion, further elected to forego the exercise of continuing supplemental federal jurisdiction over the plaintiff's pendent state law count four, in consideration of the absence of an independent basis for original federal jurisdiction over that cause. 28 U.S.C. § 1367(c)(3); *Mays v. Buckeye Rural Elec. Co-op., Inc.*, 277 F.3d 873, 881–82 (6th Cir.2002).

decision, the record below, the briefs of counsel, and the controlling legal authorities. It concludes that no legal error infected the trial court's ruling that Borman failed to adequately allege predicate exhaustion of available ERISA administrative remedies; and further, that no abuse of discretion sullied the lower bench's resolution that Borman should first exhaust administrative remedies made available by A&P prior to suing it in federal court. The plaintiff has not proved that his future resort to A&P's claim and review procedures would be futile. *See Fallick,* 162 F.3d at 419–21. Moreover, the congressionally embraced policy undergirding the ERISA system and its administrative exhaustion requirement, namely the facilitation of comparatively inexpensive and expeditious in-house resolution of employee benefit disputes, manifestly advances an important public interest. *Perry v. Simplicity Engineering,* 900 F.2d 963, 967 (6th Cir.1990). Thus, the attempted circumvention of those procedures by a litigant ordinarily should not be tolerated. *See, e.g., Baldwin County Welcome Center v. Brown,* 466 U.S. 147, 152, 104 S.Ct. 1723, 80 L.Ed.2d 196 (1984) (per curiam).

Accordingly, this court hereby adopts the district court's July 9, 2001 opinion and order entered July 10, 2001. The dismissal of the plaintiff's complaint, without prejudice, is **AFFIRMED.**