**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 17a0547n.06

No. 16-2687

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**
Oct 02, 2017
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| TYRONE GUY; PAULA HAWKINS GUY, | ) | |
| | ) | |
| Plaintiffs-Appellants, | ) | |
| v. | ) | ON APPEAL FROM THE |
| | ) | UNITED STATES DISTRICT |
| MERCANTILE BANK MORTGAGE CO.; | ) | COURT FOR THE WESTERN |
| MERCANTILE BANK CO., | ) | DISTRICT OF MICHIGAN |
| | ) | |
| Defendants-Appellees, | ) | |

BEFORE: MOORE, WHITE, and DONALD, Circuit Judges.

**HELENE N. WHITE, Circuit Judge.** Plaintiffs Tyrone Guy and Paula Hawkins Guy allege discriminatory lending practices in violation of the Equal Credit Opportunity Act, ("ECOA"), 15 U.S.C. § 1691e.[1] The district court dismissed their third-amended complaint on statute-of-limitations grounds, and the Guys appeal. We **AFFIRM.**

**I.**

Tyrone and Paula Guy are married to each other and are both African-American. Tyrone Guy owns and operates Brownstone Properties. Paula Guy owns and operates Rehabilitation, Restoration and Relaxation Station ("R3"). According to Plaintiffs' third-amended complaint, Paula Guy and R3 first obtained a loan from Defendant Mercantile Bank Mortgage ("Mercantile") in approximately 2000 and refinanced that loan "roughly three or four times." [R. 35 at PID 507]. In 2005, Mercantile loaned the Guys and Brownstone approximately $225,000

---

[1] The Guys also asserted claims under the Fair Housing Act that were dismissed by the district court. They do not appeal the dismissal of those counts.

for a development project and extended additional loans in early 2006. The Guys' initial loan officer was Pat Julien, who was in charge of Mercantile's efforts to focus on minority lending. Julien had authority to approve loans of less than one-million dollars without any other Mercantile review and did so "with limited due diligence and minimal paperwork." [*Id.* at PID 479].

In 2006, Julien left Mercantile Bank and her accounts were transferred to other loan officers. Paula Guy wrote a letter to and later met with Michael Price, Mercantile CEO, expressing her concern that black clients were now "being treated differently" than they had been during Julien's tenure. Between 2006 and 2009, Mercantile changed its lending policies, which the Guys allege "increased the bases upon which it could call a loan or foreclose on collateral, and began to aggressively enforce standards it had ignored for years." [*Id.* at PID 493, 496]. The Guys allege this policy change was intended to eliminate minority business borrowers.

In January 2008, Mercantile "pulled the funding" on existing R3 projects and accelerated the debt, citing alleged payment delinquencies and past-due real-property taxes. Mercantile's records reflect that R3 and Brownstone routinely made late payments and did not provide financial information when asked, which the Guys do not dispute. Previously, the bank accepted late payments made during a "grace period." However, Mercantile would not accept any late payments from the Guys after January 2008, instead calling R3's loan and accelerating the debt. The Guys were unable to pay the accelerated amount and defaulted on their loans. Mercantile seized and sold both R3's and Brownstone's real property to pay the debt. Mercantile also foreclosed on other collateral, garnished wages, and obtained a deficiency judgment.

The Guys initially sought legal representation in 2008 and continued to seek counsel thereafter, but were not successful until they retained counsel to pursue the instant suit in 2015.

The Guys filed this action on September 18, 2015 simultaneously with nine other suits brought by minority borrowers against Mercantile. The Guys allege the proffered reasons for Mercantile's adverse loan actions were pretextual and that Mercantile terminated its lending relationship with them, at least in part, because of their race. Through discovery, Mercantile disclosed emails sent among its employees that arguably show racial animus. Mercantile moved to dismiss all ten cases, arguing the claims were barred by the statute of limitations, even with the benefit of a discovery rule, and that the complaint did not plausibly state a claim for relief. The district court dismissed all ten cases, finding the alleged violations took place from 2007 to 2009 and were thus barred by the statute of limitations. The Guys are the only Plaintiffs in this appeal.[2]

## II.

We review the district court's dismissal on statute-of-limitations grounds de novo. *Tolbert v. State of Ohio Dep't of Transp.*, 172 F.3d 934, 938 (6th Cir. 1999) (citation omitted).

The ECOA prohibits creditors from taking an adverse action against any credit applicant if that action is taken "on the basis of race, color, religion, national origin, sex or marital status, or age." 15 U.S.C. § 1691(a)(1). It is undisputed that Mercantile is a "creditor" within the

---

[2] Other Plaintiffs appealed separately. *See, e.g.*, *Mickens v. Mercantile Bank Mortgage Co.*, No. 16-2674, 2017 WL 4075072 (6th Cir. Sept. 14, 2017) (affirming dismissal).

meaning of the ECOA. 15 U.S.C. § 1691a(e). Claims brought under the ECOA that accrued prior to July 21, 2010 are subject to a two-year statute of limitations.[3]

Based on the facts in Plaintiffs' third-amended complaint, the district court found the alleged violations took place from 2007–2009. The district court thus dismissed the claims as time barred.[4] On appeal, the Guys do not dispute the district court's factual finding regarding the dates of the alleged violations, but argue the statute of limitations was extended by the application of the discovery rule or the fraudulent concealment doctrine.[5]

## III.

Under the ECOA, the statute of limitations period begins to run on the "occurrence of [a] violation" of the statute. 15 U.S.C. § 1691e(f). The term "adverse action" is defined as a "denial or revocation of credit, a change in the terms of an existing credit arrangement, or a refusal to grant credit in substantially the amount or on substantially the terms requested." 15 U.S.C. § 1691(d)(6). "Courts construing the ECOA's limitations period have concentrated their attention on the discriminatory conduct giving rise to a statutory or regulatory claim." *Mays v. Buckeye Rural Elec. Co-op., Inc.*, 277 F.3d 873, 879 (6th Cir. 2002). The focus of inquiry is

---

[3] On July 21, 2010, Congress passed the Dodd-Frank Act, which increased the limitations period for bringing an action under the ECOA from two years to five years. *See* Pub. L. No. 111–203, § 1085(7), 124 Stat. 1376, 2085 (2010) (codified at 15 U.S.C. § 1691e(f)). The lengthened period did not take effect until July 2010, and the two-year limitations period applies to claims accruing prior to that date. *See RL BB Acquisition, LLC v. Bridgemill Commons Dev. Grp., LLC*, 754 F.3d 380, 387 n.4 (6th Cir. 2014). The Guys do not argue their claim is subject to the five-year period.

[4] The Guys state the district court "found that discrimination 'probably did occur, illegally as a civil rights violation.'" [Appellants' Br. at 4, 9]. Although no citation is provided, it appears this is incorrect. The district court made no finding in its written opinion as to the merits of the discrimination claim. [R. 43].

[5] The Guys cite our decision in *Bridgemill Commons* for general additional support. There, as an issue of first impression, we held that a defendant may raise a violation of the ECOA as an affirmative defense of recoupment. 754 F.3d at 388. Although recoupment claims are not generally time-barred so long as the main action is timely, we explicitly noted that claims brought directly under the ECOA must be brought within the statute of limitations. *Id.* at 387. Therefore, *Bridgemill Commons* does not support the Guys' argument.

upon the discriminatory acts, not upon the time at which the consequences of the acts become most painful. *Id.*

When a statute does not speak to the issue, federal courts will generally apply the discovery rule to toll the running of the statute of limitations until the plaintiff discovers or should have discovered his or her injury. *Rotella v. Wood*, 528 U.S. 549, 555 (2000). The discovery rule is applied when the plaintiff, "due to facts and circumstances not within his control," has no knowledge that an injury occurred. *Univ. of Pittsburgh v. Townsend*, 542 F.3d 513, 527 (6th Cir. 2008). The district court found that the discovery rule does not apply to ECOA claims. The Guys contend this was error and argue they could not have discovered their injury until Mercantile disclosed emails displaying racial animus and discriminatory intent.

However, the Supreme Court has "been at pains to explain that discovery of the injury, not discovery of the other elements of a claim, is what starts the clock." *Rotella*, 528 U.S. at 555. Even within the context of medical malpractice, "where the cry for a discovery rule is loudest, . . . the justification for a discovery rule does not extend beyond the injury." *Id. See also Patterson v. Chrysler Grp.*, LLC, 845 F.3d 756, 763–64 (6th Cir. 2017) ("Under the discovery rule, 'the limitations period begins to run when the plaintiff discovers, or with due diligence should have discovered, the injury that is the basis of the action.'") (quoting *Redmon v. Sud-Chemie Inc. Ret. Plan for Union Emps.*, 547 F.3d 531, 535 (6th Cir. 2008)).

Here, the Guys were injured when Mercantile took adverse lending actions, called loans, and foreclosed on collateral. It is undisputed that the Guys' injuries took place in 2008 and 2009. The Guys first sought representation in 2008, which indicates they were not only aware of their injuries but also that legal recourse might be available. Because the discovery rule does not

extend beyond discovery of injury, the Guys' claims would be time barred even if the discovery rule applied to the ECOA.

**IV.**

The Guys also argue the statute of limitations should be extended because Mercantile engaged in fraudulent concealment, which misled them about their potential cause of action.

In order to toll the statute of limitations based on fraudulent concealment, a plaintiff must prove that: "(1) [the] defendant[] concealed the conduct that constitutes the cause of action; (2) defendant['s] concealment prevented plaintiffs from discovering the cause of action within the limitations period; and (3) until discovery, plaintiffs exercised due diligence in trying to find out about the cause of action." *Egerer v. Woodland Realty, Inc.*, 556 F.3d 415, 422 (6th Cir. 2009) (citations omitted). "A plaintiff must plead the factual allegations underlying a claim of fraudulent concealment with particularity." *Carrier Corp. v. Outokumpu Oyj*, 673 F.3d 430, 446 (6th Cir. 2012) (citing *Friedman v. Estate of Presser*, 929 F.2d 1151, 1160 (6th Cir. 1991)). The plaintiff must establish affirmative acts of concealment; "[m]ere silence, or [an] unwillingness to divulge one's allegedly wrongful activities, is not sufficient" to warrant tolling. *Pinney Dock & Transp. Co. v. Penn Cent. Corp.*, 838 F.2d 1445, 1465-72 (6th Cir. 1988), *cert. denied*, 488 U.S. 880 (1988). "[T]here must be some trick or contrivance intended to exclude suspicion and prevent inquiry." *Carrier*, 673 F.3d at 446-47 (internal quotation marks omitted).

The Guys argue that Mercantile fraudulently concealed a "policy to no longer provide loans to black people." [Appellants' Br. at 12]. The only affirmative acts of concealment to which the Guys point, however, were Mercantile's purportedly untrue claims that the loans were being called for "late payments and the existence of tax liens." Though false statements that

"conceal[] from the plaintiff facts respecting the accrual or merits of the plaintiff's claim" may serve as a basis for equitable tolling, *see Hill v. U.S. Dep't of Labor*, 65 F.3d 1331, 1337 (6th Cir. 1995), such relief is warranted only when the defendant's allegedly fraudulent statements constituted "a plausible explanation" that "lulled [the plaintiffs] into not filing [their] claim[s] sooner." *See id.*; *see also Rhodes v. Guiberson Oil Tools Div.*, 927 F.2d 876 (5th Cir.), *cert. denied*, 502 U.S. 868 (1991) (holding equitable tolling was appropriate where an employer cited the need for a workforce reduction when he fired an older employee, which was plausible in light of an industry-wide recession and which caused the employee not to bring an age-discrimination suit within the statute of limitations, when in fact the employer had replaced the employee with a younger person at a lower salary).

Here, however, the Guys admit in their complaint that they immediately doubted the veracity of Mercantile's stated reasons for pulling their loans in light of the bank's prior willingness to accept late payments, and therefore Mercantile did not "lull[] [the Guys] into not filing [their] claim[s] sooner." *See Hill*, 65 F.3d at 1337. As a result, equitable tolling based on fraudulent concealment is not appropriate in this case.

**V.**

We **AFFIRM** the district court's dismissal on statute-of-limitations grounds.